UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

VINCENT F.,

       Plaintiff,

v.                 1:17-CV-0446
                    (TWD)
COMM'R OF SOC. SEC.,

       Defendant.
_____

APPEARANCES:            OF COUNSEL:

VINCENT F.
 Plaintiff, *Pro Se*
41 North 2nd Street
Apt. 808
Hudson, NY 12534

U.S. SOCIAL SECURITY ADMIN.      SERGEI ADEN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## **DECISION and ORDER**

    Currently before the Court, in this Social Security action filed by Vincent F. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 11 and 12.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

I.      RELEVANT BACKGROUND

    A.      Factual Background

Plaintiff was born in 1968, making him 45 years old at the application date and 47 years old at the date of the ALJ's decision. Plaintiff reported leaving school after having to repeat the tenth grade twice, though he later obtained a GED. He reported previously doing factory-type work and working as a taxi driver. At the initial application level, Plaintiff alleged disability due to a learning disability, head trauma, and back pain.

    B.      Procedural History

Plaintiff applied for Supplemental Security Income on January 14, 2014. His application was initially denied on April 18, 2014, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). He appeared at an administrative hearing before ALJ Carl E. Stephan on October 8, 2015. (T. 35-56.)[1] On November 10, 2015, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 16-34.) On February 17, 2017, the Appeals Council denied his request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-6.)

    C.      The ALJ's Decision

The ALJ made the following six findings of fact and conclusions of law. (T. 19, 22-30.) First, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 14, 2014, the application date. (T. 19.) Second, the ALJ found Plaintiff's history of traumatic brain injury ("TBI"), organic brain syndrome, post traumatic left temporal encephalomalacia, mild

---

[1]    The Administrative Transcript is found at Dkt. No. 10. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

neurocognitive disorder, and borderline intellectual disability are severe impairments. (T. 19, 22-23.) Third, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 23-24.) The ALJ considered Listing 12.02 (organic mental disorders). (*Id.*) Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> [he] is able to understand, remember and carry out simple instructions, and perform simple, routine and repetitive tasks, he can make judgments commensurate with the functions of simple, unskilled work, he can respond appropriately to supervision, coworkers and the public, he can handle usual work situations, and he is able to deal with occasional changes in a routine work setting.

(T. 24.) Fifth, the ALJ found Plaintiff has no past relevant work. (T. 29.) Lastly, the ALJ found there are jobs existing in significant numbers in the national economy Plaintiff can perform and therefore concluded Plaintiff is not disabled. (T. 29-30.)

D. **The Parties' Briefings on Their Cross-Motions**

1. **Plaintiff's Motion for Judgment on the Pleadings**

Plaintiff was initially represented in this action by Peter M. Margolius, Esq. (Dkt. No. 1.) Mr. Margolius filed a memorandum of law on behalf of Plaintiff on September 22, 2017. (Dkt. No. 11.) Following Mr. Margolius' death, the Court instructed Plaintiff to advise whether he would be proceeding *pro se* or retaining new counsel to represent him. (Dkt. No. 13.) On August 20, 2018, Plaintiff was directed to provide the Court with his current address and telephone number in writing by August 31, 2018. (Dkt. No. 14.) A copy of the *pro se* handbook and notice was also issued and mailed to Plaintiff with a copy of the Local Rules and Lawyer

Referral Guide on August 20, 2018. (Dkt. No. 15.) On September 6, 2018, he returned the executed *pro se* handbook and notice to the Court. (Dkt. No. 16.)

Plaintiff makes two arguments in support of his motion for judgment on the pleadings. (Dkt. No. 11 at 1, 3-6.[2]) First, he argues the RFC is not supported by substantial evidence. (*Id*. at 1, 3-4.) He contends the RFC is not supported by the March 2015 neuropsychological evaluation and opinion of psychologist Michael Long, Ph.D., the March 25, 2015, treatment note of Samuel Koszer, M.D., or the April 2014 consultative psychiatric/intelligence evaluations by Neil Berger, Ph.D. (*Id*. at 3-4.)

Second, Plaintiff asserts the ALJ erred by failing to recontact his treating medical providers. (*Id*. at 1, 4-6.) He contends his treating sources Dr. Koszer, Dr. Long,[3] and Anna Maria Assevero, M.D., opined that he is not capable of substantial gainful employment, but the ALJ afforded little weight to these opinions because he found that none of them had offered an opinion regarding Plaintiff's ability to perform or sustain the basic mental demands of competitive, remunerative, unskilled work. (*Id*. at 5.) Plaintiff indicates that the ALJ correctly stated that a finding of disability is an issue reserved for the Commissioner, but notes he was not represented at the hearing level and the treating sources had been provided with no guidance that their opinions should have included Plaintiff's ability to perform or sustain the basic mental demands of competitive, remunerative, unskilled work. (*Id*. at 5-6.) Plaintiff contends the ALJ had a duty to develop the record and advise the treating sources that their opinions did not

---

[2] Page references to the parties' briefs refer to the page numbers inserted by the Court's electronic filing system maintained by the Clerk's Office.

[3] It appears Plaintiff includes Dr. Long in his argument that the ALJ should have recontacted his treating providers. (Dkt. No. 11, at 1, 4-6.) The Court notes, however, that it is unclear whether Dr. Long was actually a treating provider or whether he performed a one-time evaluation on referral from Dr. Koszer. (T. 213.)

4

contain all the necessary information, and the ALJ should have requested additional mental medical source statements from Plaintiff's treating sources. (*Id*. at 6.)

### 2. Defendant's Motion for Judgment on the Pleadings

Defendant makes two arguments in support of her motion for judgment on the pleadings. (Dkt. No. 12 at 2, 7-17.) First, Defendant asserts the ALJ's RFC finding is supported by substantial evidence including Plaintiff's daily activities, the medical evidence, Dr. Berger's consultative examination, and the opinion of state agency psychologist T. Bruni. (*Id*. at 8-10.) Defendant notes the ALJ indicated several medical sources made statements on an issue reserved to the Commissioner. (*Id*. at 10.) Defendant contends these sources did not indicate that Plaintiff had specific functional limitations precluding him from performing unskilled work. (*Id*. at 10-11.) The Commissioner also argues that Plaintiff's claims regarding the RFC reiterate the same evidence the ALJ considered and, at best, suggests some conflicting evidence that could be characterized as supporting his claim of total disability, which is insufficient to establish an error in light of the substantial evidence standard of review and the deference to the ALJ's resolution of conflicting evidence. (*Id*. at 11-12.)

Second, Defendant argues the ALJ had adequate evidence to reach a decision and to formulate an RFC finding supported by substantial evidence. (*Id*. at 7, 12-17.) Specifically, Defendant contends the regulations on obtaining additional evidence and the substantial evidence standard both afford wide discretion to adjudicators. (*Id*. at 12-13.) Plaintiff's argument relies on a prior version of the regulations, with the applicable provisions being amended more than three years before the ALJ's decision. (*Id*. at 13-14.) The evidence was adequate for a reasonable factfinder to have concluded, as the ALJ did, that Plaintiff retained the ability to perform unskilled work. (*Id*. at 16-17.) Defendant notes there were two specific opinions by Dr.

5

Berger and Dr. Bruni supporting the finding that Plaintiff could perform work functions, despite testing showing some difficulties and, in some respects, below average functioning, and evidence Plaintiff maintained essentially normal activities. (*Id*.) Additionally, Plaintiff was represented at the Appeals Council level and is represented before this Court (at the time of the filing of briefs on this appeal). This representation turned up no evidence Plaintiff claims is critically missing, but rather only another letter from Dr. Assevero, which is essentially duplicative of a previous statement or information already in the record. (*Id*. at 14-15.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work

7

> experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. Substantial Evidence Supports the ALJ's Analysis of the Opinion Evidence and Plaintiff's RFC

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 416.927(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). The factors for considering opinions from non-treating medical sources are the same as those for assessing

treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 416.927(c)(1)-(6).

RFC is defined as "'what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee*, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *8).

"An ALJ should consider 'all medical opinions received regarding the claimant.'" *Reider v. Colvin*, 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting *Spielberg v. Barnhart*, 367 F.Supp.2d 276, 281 (E.D.N.Y. 2005)). "The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek*, 802 F.3d at 375 (citing *Burgess*, 537 F.3d at 131). In assessing a plaintiff's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability. *See Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert

opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

In April 2014, Dr. Berger completed consultative psychiatric and intelligence evaluations and noted Plaintiff was cooperative with an adequate manner of relating, coherent and goal-directed thought process, restricted affect, neutral mood, fair insight, and good judgment. (T. 197-98.) He noted Plaintiff had more or less intact attention and concentration, mildly impaired recent and remote memory skills, and borderline cognitive functioning with a somewhat limited general fund of information. (T. 198.) Regarding the intelligence evaluation, Plaintiff recalled and understood instructions, though Dr. Berger sometimes had to repeat instructions for some items because Plaintiff would forget. (T. 201.) Plaintiff's attention and concentration were good and testing indicated a reading grade equivalent of 6.4. (*Id.*) Testing indicated a full scale IQ ("FSIQ") of 71 which was consistent with a borderline range of intellectual functioning and, together with his lack of adaptive functioning issues, "argued against any diagnosis and intellectual disability." (T. 202.)

Dr. Berger diagnosed unspecified depressive disorder and a mild neurocognitive disorder with a good prognosis and indicated Plaintiff would need assistance to manage his own funds. (T. 199, 203.) He opined Plaintiff can follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration and a regular schedule,

perform complex tasks independently, and make appropriate decisions. (T. 198, 203.) Dr. Berger indicated Plaintiff has no problems in most areas in self-care, communication, social interactions, or self-direction and noted that while, "[a]cademics may have its minor impact, [] home living, leisure, and work are not particularly impacted. There do not seem to be any major adaptive functioning issues." (T. 203.) He also opined Plaintiff has some mild limitations on his ability to relate adequately with others, appropriately deal with stress, and learn new tasks. (T. 198, 203.) Dr. Berger noted the results of the examination appeared to be consistent with psychiatric and cognitive issues, but these issues do not appear to be significant enough to interfere with Plaintiff's ability to function on a daily basis. (T. 198-99, 203.)

In assessing Plaintiff's RFC, the ALJ granted the most weight to Dr. Berger's opinion because he had the opportunity to clinically interview and evaluate Plaintiff and reached his conclusions regarding Plaintiff's ability to perform the basic mental demands of work based on his clinical presentation, reported treatment history, performance on the objective intelligence measure, and demonstrated abilities for adaptive functioning. (T. 27-28.)

In March 2015, Dr. Long conducted a neuropsychological evaluation based on a referral from Dr. Koszer. (T. 213-215, 221-23, 238-40.) Dr. Long noted that recent cranial imaging revealed left temporal encephalomalacia resulting from Plaintiff's 2003 TBI. (T. 213.) The results of the evaluation seemed to indicate at least a mild reduction from Plaintiff's modest pre-injury baseline and noted a FSIQ of 79. (*Id*.) Plaintiff displayed his greatest limitations in measures of recent memory and new learning. (T. 214.) Dr. Long noted the structured cognitive assessment corroborated significant residual impairments and the residual cognitive impairments were perceived as a substantial handicap to any full time competitive employment. (T. 215.)

Plaintiff would likely require formal vocational rehabilitation assistance to obtain and maintain even part-time work to supplement long-term disability income. (*Id.*)

The ALJ afforded little probative weight to Dr. Long's opinion, noting a finding of disability is an issue reserved to the Commissioner and a statement that an individual is disabled or unable to work is not entitled to special significance or weight. (T. 27.) The ALJ also noted Dr. Long did not offer an opinion regarding Plaintiff's ability to perform or sustain the basic mental demands of competitive, remunerative, unskilled work, which involve only simple, routine or repetitive tasks that can be learned on the job in a short period of time. (*Id.*)

The ALJ noted Dr. Koszer reviewed the results from Dr. Long's evaluation and stated the evaluation demonstrated poor verbal memory, comprehension and attention skills and severe memory and language impairment. (T. 27, 229, 231.) The ALJ pointed out Dr. Koszer's June 2015 opinion that Plaintiff is permanently and totally disabled and should be considered for long-term disability. (T. 27, 229.) The ALJ also noted Dr. Assevero's February 2014 statement indicating Plaintiff has memory, focus and concentration problems secondary to his history of head trauma, he appears to have below normal comprehension and understanding, and he asks the same questions over and over. (T. 27, 195.) The ALJ clearly reviewed Dr. Assevero's indication that she believed Plaintiff was a good candidate for disability and, in March 2015, she opined Plaintiff is clearly disabled with cognitive impairments secondary to TBI. (T. 27, 195, 218.) The ALJ afforded little weight to these opinions from Dr. Koszer and Dr. Assevero, noting again that a finding of disability is an issue reserved to the Commissioner and that neither doctor offered an opinion regarding Plaintiff's ability to perform or sustain the basic mental demands of competitive, remunerative, unskilled work. (T. 27.)

Plaintiff argues the RFC determination is not supported by Dr. Koszer's opinion, Dr. Long's neuropsychological evaluation, or Dr. Berger's consultative examination. (Dkt. No. 11, at 1, 3-4.) The Court finds this argument unpersuasive for the following reasons.

First, in assessing the RFC, the ALJ adequately summarized Plaintiff's testimony and treatment history as well as the opinions of record. (T. 24-29.) In so doing, the ALJ provided a detailed analysis relating to his RFC determination including consideration of the opinion evidence and sufficient reasons for the weight afforded to each opinion. (T. 26-29.)

Second, the ALJ is correct in his assessment of the treating source opinions regarding the lack of function-by-function analysis provided in those opinions. (T. 27.) While Dr. Koszer and Dr. Assevero are treating physicians, their opinions provide no insight as to Plaintiff's actual limitations and were therefore of little value to the ALJ in determining Plaintiff's RFC. *See Mortise v. Astrue,* 713 F. Supp. 2d 111, 125 (N.D.N.Y. 2010) ("[A]n opinion concerning the ultimate issue of disability, from any source, is reserved to the commissioner."); *Fuimo v. Colvin*, 948 F. Supp. 2d 260, 267 (N.D.N.Y. 2013) (noting that it was proper for the ALJ to give little weight to an opinion that the plaintiff was severely disabled and not competitively employable because that concerned an issue reserved to the Commissioner) (citing 20 C.F.R. § 416.927(d)(1)).

Similarly, the ALJ also provided sufficient reasoning for the weight afforded to Dr. Long's opinion, again by indicating this opinion lacked sufficient analysis of Plaintiff's ability to perform or sustain the basic mental demands of competitive, remunerative, unskilled work. (T. 27.) In carefully assessing this opinion as well as the rest of the opinion evidence, the ALJ fulfilled his responsibility of reviewing all the evidence before him, resolving any inconsistencies therein, and making a determination consistent with the evidence as a whole. *See*

*Bliss v. Colvin*, 13-CV-1086 (GLS/CFH), 2015 WL 457643, at *7 (N.D.N.Y., Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *Petell v. Comm'r of Soc. Sec.*, 12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10 (N.D.N.Y., Mar. 21, 2014) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."). This Court will not reweigh the evidence before the ALJ.

Finally, the ALJ was entitled to rely on Dr. Berger's consultative opinion because he is a qualified expert in the field of social security disability and his opinion did indicate a function-by-function analysis which was lacking in the opinions from Dr. Koszer and Dr. Assevero. *Frey*, 485 F. App'x at 487; *Little*, 2015 WL 1399586, at *9. Further, while Plaintiff seems to indicate that Dr. Berger's examination is not consistent with the RFC by noting some of the aspects of that examination in his memorandum of law, Plaintiff provides no substantive argument to support any contention that Dr. Berger's need to repeat instructions during the evaluation and Plaintiff's FSIQ of 71 are inconsistent with the RFC determination. (Dkt. No. 11 at 4.)

For the reasons outlined above, the ALJ's analysis of the medical opinions and the resulting RFC are supported by substantial evidence. Remand is therefore not required on this basis.

### B. The ALJ's Failure to Recontact Plaintiff's Treating Medical Providers Does Not Warrant Remand

Although the claimant has the general burden of proving that he or she has a disability within the meaning of the Social Security Act, "'the ALJ generally has an affirmative obligation to develop the administrative record'" due to the non-adversarial nature of a hearing on disability benefits. *See Burgess*, 537 F.3d at 128 (quoting *Melville*, 198 F.3d at 52; citing *Draegert v. Barnhart*, 311 F.3d 468 (2d Cir. 2002), *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004)).

"Where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)). "Generally, additional evidence or clarification is sought when there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques." *Janes v. Colvin*, 15-CV-1528 (GTS), 2017 WL 972110, at *4 (N.D.N.Y. Mar. 10, 2017), *aff'd* 710 F. App'x 33 (2d Cir. 2018)) (citing 20 C.F.R. § 404.1520b; *Rosa*, 168 F.3d at 80; *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998)).

Plaintiff notes he was not represented at the hearing and argues the ALJ had a duty to develop the record by advising Plaintiff's treating sources that their reports did not contain all the necessary information and requesting additional mental medical source statements from them. (Dkt. No. 11 at 1, 4-6.) The Court finds this argument unpersuasive for the following reasons.

First, this Court and the Second Circuit have indicated that the ALJ's duty to develop the record is triggered when additional evidence is needed to allow him to make a decision. *Janes*, 2017 WL 972110, at *4; *Rosa*, 168 F.3d at 80; *Schaal*, 134 F.3d at 505. Such does not appear to be the case here because the ALJ had Dr. Berger's consultative examination as well as Plaintiff's testimony and treatment records, all of which support his RFC. As indicated above, the ALJ provided a detailed analysis of the evidence of record including sufficient reasons for the weight afforded to each medical opinion. Because substantial evidence supports the finding that Plaintiff is not disabled, the Court finds that any error by the ALJ in not recontacting Plaintiff's treating providers for more detailed opinions is harmless error at best.

Second, Plaintiff's lack of representation at the hearing was adequately addressed by the ALJ. The ALJ talked to Plaintiff at the hearing regarding his right to be represented and indicated a postponement could be given if Plaintiff wanted to look into getting an attorney. (T. 37-39.) When Plaintiff stated that his doctors had made it clear to him that they did not think he needed a lawyer, the ALJ emphasized Plaintiff's doctors were doctors and not lawyers to be depended on for legal advice. (T. 40.) Plaintiff chose to proceed without representation. (*Id*.) Further, as Defendant contends, Plaintiff was represented at the Appeals Council level and was initially represented by Mr. Margolius before this Court through and including completion of his brief, but this representation at either level did not result in the submission of any additional opinion evidence. (Dkt. No. 12 at 15; T. 3, 6-7.) Lastly, Plaintiff does not identify any specific critical evidence that is missing, or persuasively argue any way in which the ALJ was remiss in his duty to develop the record.

For the reasons above, the Court finds that the ALJ's failure to recontact Plaintiff's treating providers is not harmful error. Remand is therefore not required on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **<u>AFFIRMED</u>**, and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: September 17, 2018
Syracuse, New York

_____
Thérèse Wiley Dancks
United States Magistrate Judge